***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Deluca and the briefs and arguments of the parties. The Plaintiff has shown good grounds to reconsider the evidence. Accordingly, the Full Commission reverses the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
 ***********
The Full Commission finds as a fact and concludes as a matter of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The date of the alleged injury which is the subject of this claim is January 25, 2008. *Page 2 
2. On such date, the parties hereto were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. On such date, the employer-employee relationship existed between the employee-plaintiff and the employer-defendant.
4. On such date, the employer-defendant employed three (3) or more employees.
5. As of such date, the employer-defendant was self-insured and Compensation Claims Solutions was the servicing agent for the City of Durham.
6. The record consists of Stipulated Exhibits 1-5 and transcripts of the depositions of Dr. Kimberly Barrie and Dr. William Mallon.
7. Issues for resolution are as follows;
 a. Whether Plaintiff's compensable injury of January 25, 2008 materially aggravated Plaintiff's wrist conditions;
 b. Whether Plaintiff has sustained a compensable change of condition;
 c. To what additional benefits is Plaintiff entitled.
8. After the hearing, the parties stipulated to an average weekly wage for Plaintiff's injury of October 5, 2005, of $656.06, and an average weekly wage of $924.55 for the injury of January 25, 2008.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff, who was fifty (50) years old at the time of the hearing before the Deputy Commissioner, worked for defendant as a police officer. On April 25, 1996, plaintiff sustained *Page 3 
bilateral wrist injuries as the result of a work-related fall. Plaintiff treated with Dr. William J. Mallon for those injuries. At that time, plaintiff's left wrist was far more symptomatic than his right wrist. Dr. Mallon performed surgery in 1996 for scapholunate dissociation of plaintiff's left wrist.
2. Plaintiff had continued pain in both of his wrists in 1998, but during a visit to Employee Health Services on January 26, 1999, Ms. Brun, Nurse Practitioner, stated that "[t]he recent injury to the left wrist seems to have resolved and he does not have any significant symptoms with it. However the right wrist seems to be the same . . . He has been able to continue work as it has been tolerable". His pain continued throughout 1999 but was doing much better in 2000 until October 5, 2000.
3. Plaintiff re-injured his wrists on October 5, 2000, when he fell from his bicycle during police training. Plaintiff filed a workers' compensation claim for the October 5, 2000, incident. Defendant accepted plaintiff's claim and provided all medical treatment to which he was entitled. Plaintiff again treated with Dr. Mallon for his bilateral wrist problems. Dr. Mallon noted plaintiff "has had problems with this for a long time." Dr. Mallon recommended surgical repair of plaintiff's scapholunate dissociation on the right wrist. Dr. Mallon performed the procedure on December 15, 2000.
4. Plaintiff followed up with Dr. Mallon regularly after the December 2000 surgery. During this period, plaintiff continued to complain of pain in his right wrist. On February 27, 2001, Dr. Mallon ordered x-rays of plaintiff's right wrist. Dr. Mallon examined the x-rays and indicated he was "really concerned that [plaintiff] is not fully fused . . ." On May 7, 2001, Dr. Mallon released plaintiff at maximum medical improvement. Dr. Mallon assigned a 15% *Page 4 
permanent partial impairment rating to plaintiff's right hand. Dr. Mallon released plaintiff to return to full duty work.
5. Plaintiff subsequently returned to work for defendant in his previous capacity. Defendant therefore sent plaintiff a Form 21 agreement for payment of indemnification benefits. On July 11, 2001, plaintiff signed the Form 21 agreement. Defendant paid plaintiff full compensation for his rating and period of disability. Defendant then filed a Form 28B, notifying plaintiff of his right to additional medical compensation.
6. On July 15, 2002, plaintiff returned to Dr. Mallon with ongoing complaints of right wrist pain. Dr. Mallon noted plaintiff's right wrist was "not doing as well as the left one did." Dr. Mallon ordered x-rays, which revealed further collapse of the scapholunate junction. Dr. Mallon informed plaintiff that another surgery may be needed.
7. In August 2002, plaintiff began treatment with Dr. Kimberly A. Barrie, a hand and wrist specialist at Triangle Orthopaedic Associates. Dr. Barrie noted plaintiff had previously undergone bilateral scapholunate ligament repairs by Dr. Mallon. Plaintiff informed Dr. Barrie he was having difficulty with his day-to-day job activities. Dr. Barrie concluded that plaintiff's "deformity" had progressed to a point where it was no longer an option to reconstruct the scapholunate ligament, "especially in light of the previous reconstruction failure." Dr. Barrie also noted that x-rays revealed evidence of one of the Mitek anchors, which attach ligaments to the bone, pulling out. Dr. Barrie recommended a "salvage procedure," specifically a scaphoid excision and four corner fusion, but noted there was nothing urgent about the recommendation.
8. Dr. Barrie performed the procedure on November 13, 2002. Plaintiff participated in physical therapy following the surgery. On January 23, 2003, Dr. Barrie released plaintiff to return to work. *Page 5 
9. On February 13, 2003, Dr. Barrie indicated plaintiff was at maximum medical improvement and that she was "extremely pleased" with plaintiff's progress in physical therapy. Dr. Barrie agreed with Dr. Mallon's permanent partial impairment rating. At the time of release, Dr. Barrie explained to plaintiff that he would "not have normal wrist bio-mechanics." Dr. Barrie indicated further surgical intervention may be needed in the future. Dr. Barrie explained that a complete wrist fusion would be needed to fully address plaintiff's condition. Dr. Barrie imposed permanent work restrictions of no lifting greater than 25 pounds with the right upper extremity and limited repetitive use of that extremity.
10. On May 28, 2003, defendant filed another Form 28B, again notifying plaintiff of his right to additional medical compensation.
11. Plaintiff returned to Dr. Barrie on October 2, 2003, with continued pain in both of his wrists. At that time, Dr. Barrie explained that neither of Mr. Taylor's wrists was normal, and additional surgery such as a wrist fusion would ultimately be necessary, although he was not yet at that point. Dr. Mallon concurred with Dr. Barrie and stated, when asked as to whether or not Mr. Taylor had fully recovered from Dr. Barrie's surgery, that, "we expect that he's going to have limited motion and it's not going to be as strong as a normal wrist".
12. Plaintiff continued to work with defendant, full-time in his usual capacity, for the next five years. Plaintiff did not miss any time from work during this period or otherwise sustain an impairment of his wage-earning capacity. Plaintiff continued to have pain and range of motion problems with his wrists. Plaintiff testified he also suffered a loss of motor skills following Dr. Barrie's surgery.
13. Between plaintiff's 2003 visit with Dr. Barrie until the date of injury on January 25, 2008, plaintiff did not receive any treatment for his wrists. Plaintiff testified that his wrists *Page 6 
had given him some problems during that period, but "not to the point where [he] felt like [he] needed medical assistance."
14. On Friday, January 25, 2008, plaintiff was involved in an altercation with a suspect, during which he fell. On the following Monday, plaintiff went to Employee Health Services (hereinafter "EHS") and indicated his wrists had been bothering him since the incident. EHS referred plaintiff back to Triangle Orthopaedic Associates for additional treatment with Dr. Mallon and/or Dr. Barrie. X-rays revealed diffuse moderate osteoarthritis bilaterally with normal alignment and hardware intact. Initially plaintiff treated with Dr. Mallon's PA, who recommended that plaintiff resume wearing his wrist splints in the evenings. Plaintiff was also prescribed Celebrex.
15. Plaintiff returned to Triangle Orthopaedic Associates on February 4, 2008, at which time he treated with Dr. Mallon. Dr. Mallon again noted plaintiff's past bilateral wrist operations. Plaintiff informed Dr. Mallon that he was experiencing more pain in his right wrist than the left. Dr. Mallon reviewed plaintiff's medical records and indicated, "he has always had pain in that." He was diagnosed with continued right wrist pain status post 4 quadrant fusion for slack wrist. Dr. Mallon informed plaintiff that the only permanent solution would be a complete wrist fusion. Dr. Mallon did not impose any work restrictions.
16. Plaintiff followed up with Dr. Mallon on February 26, 2008, and again on July 10, 2008. Plaintiff and Dr. Mallon continued to discuss the possibility of a wrist fusion. Dr. Mallon noted that Dr. Barrie's previous four quadrant fusion looked to have healed, "although there is one screw that is backing out on the spider plate." Dr. Mallon added that plaintiff was also developing further wrist arthritis. Dr. Mallon informed plaintiff he was free to continue performing his usual job duties. *Page 7 
17. The condition of plaintiff's wrists has continued to worsen since the January 25, 2008, injury. Plaintiff testified that the condition of his wrists changed after January 25th, "it is different now."
18. Plaintiff has continued to work, without additional medical treatment, since the July 10, 2008, appointment with Dr. Mallon. On February 1, 2009, plaintiff retired from the City of Durham. Plaintiff has been receiving retirement benefits since that date. Plaintiff also is currently working in the City of Durham's Reserve Police Force. Plaintiff has continued to work full time since his February 1, 2009, retirement.
19. Dr. Mallon testified that plaintiff's January 25, 2008, injury was a new injury that "exacerbate[d] an old condition".
20. Dr. Barrie agreed with Dr. Mallon's testimony, as she stated that if someone has a condition such as plaintiff's, and then has a fall on their wrist, that fall can exacerbate an old condition.
21. Plaintiff has produced sufficient evidence that he sustained an injury by accident arising out of and in the course of his employment with defendant-employer on January 25, 2008.
22. The Full Commission finds that the greater weight of the medical evidence of record indicates that the plaintiff's pre-existing wrist condition was materially aggravated for the worse by his January 25, 2008, injury by accident.
23. The Full Commission finds that the greater weight of the medical evidence of record indicates that but for plaintiff's injury by accident on January 25, 2008, he would not have required surgical treatment. *Page 8 
24. The Full Commission finds that the greater weight of the medical evidence of record indicates that surgical treatment is now required for plaintiff's wrist as recommended by Dr. Mallon.
25. The Full Commission finds that the greater weight of the medical evidence of record indicates that plaintiff's present medical condition, and any necessary medical treatment related thereto, are causally related to plaintiff's injury by accident on January 25, 2008.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW *Page 9 
1. On January 25, 2008, the plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff is entitled to ongoing medical compensation. The medical treatment provided by Dr. Mallon was reasonable and related to plaintiff's compensable injury. Defendant shall pay for all medical treatment recommended by Dr. Mallon, including surgical treatment if recommended, so long as the same effects a cure, provides relief, or lessens the period of plaintiff's disability. N.C. Gen. Stat. §§ 97-25, 97-25.1
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law the Full Commission makes the following:
 AWARD
1. Plaintiff's authorized treating physician is Dr. Mallon. Defendant shall pay for all medical treatment recommended by Dr. Mallon so long as the same effects a cure, provides relief, or lessens the period of plaintiff's disability.
2. Defendant shall pay the costs.
This the 17th day of September, 2010.
 S/___________________ DANNY LEE McDONALD COMMISSIONER
CONCURRING:
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/___________________ LINDA CHEATHAM COMMISSIONER *Page 1